TMI MANAGEMENT SYSTEMS, INC

May 1, 2007

Mr. Richard Armstead,
Contracting Officer (7FCB2-D7)
819 Taylor Street, Rm. 6A24
Ft. Worth, TX 76102-6114

RE: GS - 07F- 0007N, dated 1 October 2002

Dear Mr. Armstead,

TMI Management Systems, Inc. has received your letter of April 25, 2007 which advised us that you believe you are prevented from exercising the option on the above-referenced contract ("the contract").

The contract is a commercial items contract which states in pertinent part:

> (d) Disputes. This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613). Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

TMI has concluded that the government and TMI have failed to reach agreement on the issue your letter responded to. Accordingly, this letter is a claim filed under the Disputes Clause, 52.233-1 of the contract. On behalf of TMI, I respectfully request a contracting officer's final decision on this issue within 60 days.

The claim requests "the interpretation of contract terms," specifically, clause I-FSS-95(b) which your letter of April 25, 2007 indicates the government believes to be applicable to the contract. Our interpretation of the contract is different. We believe that this clause does not apply to our contract. This claim seeks a resolution of the differing interpretations between the government and us regarding the applicability of this clause to our contract.

Your April 25th letter states that clause I-FSS-95(b) prevents you from exercising an option with firms that are no longer small businesses because it states:

> when the contract resulted from a small business set-aside: if a previously awarded small business concern re-represents itself as other than small, the contracting officer shall be prec[illegible]



EXHIBIT 3

Since TMI is no longer no longer a small business, you believe that this clause -- if it applied to the contract -- prevents you from exercising the option under the contract.

The government interpretation follows GSA Acquisition Letter MV-03-01 issued in 2003 dealing with size of business re-representation. I do not believe that acquisition letter is still applicable since the GSA web-site shows that it expired on February 28, 2007.

Our interpretation -- that this clause does not apply to the contract -- is based on the legal principle that the exercise of an option under our contract must be done only in accordance with the terms and conditions in existence at the time the contract was signed. When the contract was executed, there was no requirement that the exercise of an option be accompanied by a recertification of small business size status. Nor has TMI agreed, as required by the Changes clause in the commercial item contract we have with GSA, to add any new clauses changing the certification requirements of the contract. In short, we believe that the government cannot now change the rules and apply this clause to the contract. We also believe that you are not prohibited from exercising the option with TMI now a large business according to guidance issued by the Small Business Administration (SBA).

**1. The government cannot impose different rules after the contract is signed**

I am relying on the legal principle that "a deal is a deal" found throughout government contract case law:

> the basic principle [is] that changes to regulations which occur after a contract begins and which substantively affect the rights of a party, generally cannot be retroactively applied, absent language saying otherwise. Put another way, we agree that a contract normally applies the substantive law in effect at the time it is entered.

In re Ace Property & Cas. Ins. Co., AGBCA No. 2006-130-R, June 28, 2006.

As the U.S. Court of Claims held:

> it would be a rare regulation which would even seek to modify, to the contractor's detriment, substantive rights in an agreement already consummated.

Lockheed Aircraft Corp. v. U. S. 426 F.2d 322, 327 -328 (Ct.Cl. 1970).

The principle of "a deal is a deal" is found in the TMI contract. Clause I-FSS-163 OPTION TO EXTEND THE TERM OF THE CONTRACT (EVERGREEN) APR 2000 acknowledges that the underlying terms and conditions of the base years continue unchanged into any option period unless some other clause allows changes citing two clauses that do authorize option term changes: the Price Adjustment Clause and the Price Reduction Clause. (Another clause allowing changes in option years is FAR 52.222-41, SERVICE CONTRACT ACT OF 1965, AS AMENDED (MAY 1989) in Attachment 28 to the TMI contract at page 28-10 and 28-11.) Significantly, no language in the contract allows the government to change the existing rule on certification of small business status. That rule stated that once a small business won a contract that

included options, the firm remained a small business for the life of the contract including any option years.

Moreover, since the contract is a commercial items contract, the only way changes to the contract can be made is bi-laterally. TMI has not agreed to any changes regarding re-certification.

In addition, when the government tried to incorporate new clauses into the contract by way of Modification No. MO06, TMI did not sign the modification. Accordingly, that modification is not effective and is not applicable to our contract.

**2. The new SBA regulations do not preclude exercising the option**

As you know, the SBA has adopted new regulations on re-certification of size status for option exercises. In its comments accompanying the new regulations, excerpts of which are attached, the SBA made two points clear:

1. the SBA honors the principle that a deal is a deal because it stated that "the final rule clarifies that re-certification does not affect the terms and conditions of the underlying contract;"

2. the new SBA rules do not preclude a contracting officer from exercising an option under a small business set-aside contract with a company that is no longer a small business.

First, in several places in the comments to the new SBA regulations and in the new regulations themselves, the SBA emphasizes that its new rules do not affect the underlying terms and conditions of the contracts. In summarizing the new regulations, the SBA says that "the final rule clarifies that re-certification does not affect the terms and conditions of the underlying contract."

In addition, the new regulations themselves at 13 CFR Sec. 121.404(g)(3)say that

> (ii) Re-certification does not change the terms and conditions of the contract. The limitations on subcontracting, non-manufacturer and subcontracting plan requirements in effect at the time of contract award remain in effect throughout the life of the contract.

Second, the new regulations make it clear that an agency is allowed to exercise options with a small business set-aside contractor that is no longer a small business.

For example, in addressing commenters' concerns "about whether options would be exercised on contracts that were set aside for small business concerns if the concern had grown to be large," the SBA expressly concluded that agencies could exercise options on small business set-aside contracts with companies that are no longer small businesses.

> The final rule does not prohibit a contracting officer from exercising an option, even where a concern has outgrown the applicable size standard on a small business set-aside contract....

Other SBA comments repeated this conclusion. In refuting commenters' concerns that the new rules "would make procuring agencies reluctant to set-aside larger, multiyear procurements," the SBA said that, under the new regulations, these large businesses would still be eligible for contracts under their existing small business set-aside contracts and options.

> ...contractors which had grown to be other than small would not be "ineligible" to receive further orders....if a procuring agency exercised an option with concern that had grown to be other than small, subsequent orders would not count towards the procuring agency's small business prime contracting goals.

The SBA went further and encouraged agencies to exercise options with these large companies in the name of increasing competition. It emphasized that NOT exercising options with these companies would be contrary to the national procurement policy of promoting competition:

> if a procuring agency declines to exercise the option of a concern that had grown to be other than small, it would lead to a dwindling pool of competition, which is contrary to the intent and purpose of the statutory and regulatory multiple award contracting provisions. SBA does not want to provide agencies and contractors with a disincentive to enter into long-term contracts.

The fact that the regulations make no such prohibition becomes important when read in conjunction with FAR 1.102-4(e)'s description of the role of members of the Acquisition Team:

> If a policy or procedure, or a particular strategy or practice, is in the best interest of the Government and is not specifically addressed in the FAR, nor prohibited by law (statute or case law), Executive order or other regulation, Government members of the Team should not assume it is prohibited. Rather, absence of direction should be interpreted as permitting the Team to innovate and use sound business judgment that is otherwise consistent with law and within the limits of their authority....

This quote clearly defines the key question government buyers must ask. The question is not "where does FAR and federal law say we can do this?" The question is "where does FAR and federal law say we cannot?"

Accordingly, when looking at the new regulations themselves, it becomes clear that the new SBA regulations do not change the terms of the underlying contract; nor do they require government agencies (1) to stop buying from TMI's FSS contract now that TMI is a large business; (2) to terminate TMI's FSS contracts; and (3) to stop exercising any options on this contract.

Let me acknowledge the obvious: the government can take the position that, if TMI does not want to go along with the new regulations, the government will choose to not exercise the option. I would suggest, however, that doing so would be improper and an abuse of discretion. The option clause cited above allows the government to exercise it if "the option is advantageous to the government considering price and the other factors covered in (2 through 4 below)." Particularly pertinent is paragraph 3 which requires the government to consider whether "performance as been acceptable under the contract."

I'm sure you're aware of the excellent past performance reports TMI has received in carrying out the base contract. In addition, eliminating TMI from the Federal Supply Schedule (FSS) would reduce, not increase competition. And since increasing competition is a national procurement goal, exercising the option would seem to be "advantageous to the government."

Certification is required for contractor money claims for more than $100,000. Certification is not required for claims for adjustment or interpretation of contract terms or for other non-monetary relief. CW Government Travel, Inc. v. U.S. 61 Fed.Cl. 559 (2004); Poysky Bros., ASBCA No. 33935, September 9, 1987.

Sincerely,

Rick M Abel
President

GSA

GSA Greater Southwest Region

June 13, 2007

TMI Management Systems
Attn: Rudy Vegliante
175 South 21st Street
Easton, PA 18042

Dear Mr. Vegliante:

You requested resolution, in your letter dated May 1, 2007, of a contract terms issue under disputes procedures, in accordance with clause 52.233-1, "Disputes," for contract GS-07F-0007N. You are alleging that clause I-FSS-95 was not incorporated in your contract at time of award and that TMI did not agree to the changes levied by the clause.

In accordance with clause I-FSS-163, "Option to Extend the Term of the Contract (Evergreen)," the Government, at its discretion, has a unilateral right to exercise the option periods. The clause states in part that "The Government *may* require continued performance of this contract... when it is determined that exercising the option is advantageous to the Government considering price and other factors." This clause is clear and unambiguous and nothing in this language restricts the Government's right to decline to exercise its option to extend the term of the contract.

Clause I-FSS-95 was incorporated into your contract by unilateral modification MO06, effective September 20, 2003 without any objection by TMI. More than three years have passed since the incorporation of that clause and TMI has continued performance under the new terms of the contract without objection.

Clause I-FSS-95, "Re-Representation of Size Status for Option Periods," subsection (b) states:

> "When the contract resulted from a small business set-aside:
> If a previously awarded small business concern re-represents itself as other than small, the Contracting Officer shall be precluded from exercising the option."

The Government has the unilateral right to exercise an option on a contract. It is not in the best interest of the GSA to exercise an option to a large business when the contract resulted from a total small business set-aside. Under the terms of clause I-FSS-95, the GSA is prohibited from exercising an option with a company that has become large when the contact was awarded under a small business set-aside.

Administration

95

EXHIBIT 4

Based on the information outlined in the paragraphs above and in accordance with clauses I-FSS-163 and I-FSS-95, the Government will not exercise the option for contract GS-07F-0007N.

This is the final decision of the Contracting Officer. You may appeal this decision to the Civilian Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Civilian Board of Contract Appeals and provide a copy to me. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract number. Instead of appealing to the Civilian Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

If you have any questions, please feel free to contact me at 817-574-2317 or email: richard.armstead@gsa.gov.

Sincerely,

Richard J. Armstead
Contracting Officer (7QSAC-D7)