# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TMI MANAGEMENT SYSTEMS, INC., Plaintiff, | ) |
| v. | ) Case No. 07-407C |
| THE UNITED STATES, Defendant. | ) Senior Judge Smith |

## PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff TMI Management Systems, Inc. ("TMI"), by undersigned counsel, respectfully requests that the Court grant summary judgment in favor of Plaintiff. In support of this Motion, Plaintiff relies upon the Complaint, the following brief, the Joint Statement of Undisputed Facts, and the Joint Appendix filed contemporaneously with this Motion. Because the Joint Appendix exceeds 50 pages, it has been filed in hard copy with the Clerk's Office in accordance with General Order No. 42A.

TERRENCE O'CONNOR
Albo & Oblon, L.L.P.
Courthouse Plaza
2200 Clarendon Boulevard
Suite 1201
Arlington, Virginia 22201
Tel: (703) 312 0410
Fax: (703) 312 0415

Attorney for Plaintiff

July 27, 2007

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

ISSUES PRESENTED..... 1

INTRODUCTION ..... 1

STATEMENT OF THE CASE..... 2

I. Formation of the Contract..... 2

II. TMI's Work under the Contract ..... 3

III. Contract's Option Clauses ..... 4

V. SBA's Policy on Re-certification of Small Business Size Status..... 7

VI. TMI's Claim to the Contracting Officer ..... 8

VII. Harm to TMI if GSA Invalidly Declines to Exercise the Option ..... 11

JURISDICTION ..... 11

STANDARD OF REVIEW ..... 12

ARGUMENT..... 13

I. The Court Should Grant Relief on the Merits ..... 13

A. Modification MO06 Was Not Validly Incorporated into the Contract..... 13

B. GSA Breached the Contract When It Declined to Exercise the Option Without Considering the Factors Required by the Options Clause and Based Its Decision Upon a Clause That Was Not Validly Incorporated Into the Contract..... 16

II. Declaratory Relief is an Appropriate Remedy..... 19

A. All Three Alliant Factors Have Been Met..... 19

B. Declaratory Relief Would Not Interfere With Contract Performance..... 22

CONCLUSION..... 23

# TABLE OF AUTHORITIES

## Cases

Alliant Techsystems, Inc. v. United States, 178 F.3d 1260 (Fed. Cir. 1999) ....... 11, 13, 19, 22, 23

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ............................................................ 12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986). ................................................................... 12

Conner Bros. Constr. Co. v. United States, 65 Fed. Cl. 65 (2005) ............................................. 12

Moden v. United States, 404 F.3d 1335 (Fed. Cir. 2005)........................................................... 12

New England Tank Indus. of New Hampshire, Inc. v. United States, 861 F.2d 685 (Fed.Cir.1988)................................................................................................................ 16

Newport News Shipbuilding and Dry Dock Co. v. United States, 44 Fed.Cl. 613 (1999) .......... 22

North American Constr. Corp. v. United States, 56 Fed. Cl. 73 (2003)..................................... 12

North Star Alaska Hous. Corp. v. United States, 76 Fed. Cl. 158 (2007) .................................. 14

Perez v. Ledesma, 401 U.S. 82 (1971). ........................................................................... 20

PGBA v. United States, 389 F.3d 1219 (Fed. Cir. 2004) .......................................................... 20

Record Steel & Constr., Inc. v. United States, 62 Fed. Cl. 508 (2004) ....................................... 11

Rumsfeld v. Freedom N.Y. Inc., 329 F.3d 1320 (Fed. Cir. 2003)............................................... 15

St. Christopher Assocs., L.P. v. United States, 75 Fed. Cl. 1 (2006) .......................................... 13

Travelers Casualty and Surety Co. v. United States, 75 Fed. Cl. 696 (2007).............................. 15

Wilner, d/b/a Wilner Constr. Co v. United States, 24 F.3d 1397 (Fed. Cir. 1994)...................... 12

## Statutes

28 U.S.C. § 1491 ............................................................................................... 11, 19

41 U.S.C. § 609 ................................................................................................. 11, 12

41 U.S.C. §§601-613 ............................................................................................ 11

### Other Authorities

11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure (Wright & Miller) § 2944. .......... 21

71 FR 66436.......... 8

### Regulations

13 CFR 121.404.......... 2, 3, 7

48 CFR 1.108.......... 7

48 CFR 517.207.......... 5

## ISSUES PRESENTED

1. Whether Modification MO06, which contains Clause I-FSS-95(b), was validly incorporated into the Contract when GSA attempted to unilaterally add Modification MO06 to the Contract without a written agreement of both parties.

2. Whether GSA breached the Contract when it decided not to exercise the option without considering the quality of TMI's past performance, as required under GSAR 552.217-71, and based its decision instead solely on a factor not validly incorporated into the Contract.

3. Whether the declaratory relief sought by Plaintiff TMI herein is appropriate.

## INTRODUCTION

Plaintiff TMI and the United States General Services Administration ("GSA") entered into Contract No. GS-07F-0007N ("the Contract") on October 1, 2002. The Contract had been awarded as a small business set-aside, and TMI had qualified as a small business at the time that it entered into the Contract. However, TMI has since grown in size and no longer certifies itself as a small business for new government contracts.

The Contract has a base period of five years with three five-year options. The base term of the Contract will expire on September 30, 2007. Under the Options Clause, the Contracting Officer may exercise the option by providing written notice to TMI within 30 days prior to the expiration of the base term. Through informal discussions with the Contracting Officer, TMI learned that the Contracting Officer believed that Clause I-FSS-95(b), which precludes the Contracting Officer from exercising an option when a previously small business concern cannot re-represent its eligibility at the time of the option, had been validly incorporated into the Contract through GSA's unilateral amendment to the Contract of Modification MO06.

On May 1, 2006, TMI submitted a formal claim to the Contracting Officer asking for a Final Decision on whether I-FSS-95(b) applied to the Contract. In its claim, TMI argued that GSA's attempt to unilaterally add Modification MO06 violated the Contract's Changes Clause, which required any modification to the Contract to be made by written agreement of both parties, and therefore I-FSS-95(b) was not a valid clause under the Contract.

By letter dated June 13, 2007, the Contracting Officer issued a Final Decision denying TMI's claim based on his finding that I-FSS-95(b) had been incorporated into the Contract and consequently the Contracting Officer was prohibited from exercising the option. This action is a timely appeal of the Contracting Officer's Final Decision.

## STATEMENT OF THE CASE

### I. Formation of the Contract

Plaintiff TMI and the GSA entered into Contract No. GS-07F-0007N on October 1, 2002. Joint Appendix (hereinafter, "JA") at 1. The Contract is a commercial item fixed-price with an economic adjustment, indefinite delivery, indefinite quantity ("IDIQ") contract. The Contract is a GSA Federal Supply Service ("FSS") contract under FSS Title 539 Solutions and More, under the Federal Supply Group 7363 Temporary Support Services: Professional and Administrative. Because GSA designated Group 7363 as a small business set-aside in 1997, all contracts in this group are held by firms self-designated as a small business as that term is used by the Small Business Administration ("SBA").

When TMI entered into the Contract with GSA in 2002, TMI qualified as a small business. At that time, SBA regulation 13 CFR 121.404 stated that the small business status of a

vendor was established by the vendor's status at the time its offer was submitted to the government. That regulation provides:

> Generally, SBA determines the size status of a concern (including its affiliates) as of the date the concern submits a written self-certification that it is small to the procuring agency as part of its initial offer including price. The following are two exceptions to this rule: (a) The size status of an applicant for a Certificate of Competency (COC) relating to an unrestricted procurement is determined as of the date of the concern's application for the COC. (b) Size status for purposes of compliance with the nonmanufacturer rule set forth in § 121.406(b)(1) and the ostensible subcontractor rule set forth in § 121.103(f)(3) is determined as of the date of the best and final offer.

13 CFR 121.404. Neither of the two exceptions apply here.

During the time since TMI and GSA entered into the Contract, and as a direct result of TMI's work under the Contract, TMI has grown in size and no longer qualifies as a small business. As such, TMI no longer certifies itself as a small business when submitting offers for new government contracts.

## II. TMI's Work under the Contract

The Contract includes a clause giving the parties the right to use blanket purchase agreements ("BPAs"). This clause provides, in pertinent part:

> Blanket Purchase Agreements (BPA's) can reduce costs and save time because individual orders and invoices are not required for each procurement but can instead be documented on a consolidated basis. The Contractor agrees to enter into BPA's with ordering activities provided that: (a) The period of time covered by such agreements shall not exceed the period of the contract including option year period(s);
> (b) Orders placed under such agreements shall be issued in accordance with all applicable regulations and the terms and conditions of the contract; and
> (c) BPAs may be established to obtain the maximum discount (lowest net price) available in those schedule contracts containing volume or quantity discount arrangements.

JA 43, Clause I-FSS-646, Blanket Purchase Agreements (May 2000).

The parties do not dispute that TMI has successfully carried out numerous task orders under the GSA Contract as well as BPAs set up under the Contract, and that TMI has received excellent ratings from both GSA and agencies that have a BPA under the Contract. Joint Statement of Undisputed Facts (hereinafter "JSUF") ¶ 5.

**III. Contract's Option Clauses**

The Contract has a base period of five years with three five-year options. JA 36-37, Clause I-FSS-163, Option to Extend the Term of the Contract (Evergreen) (Apr. 2000) ("Options Clause"). The base period of the Contract will expire on September 30, 2007.

Under the Options Clause, the Contracting Officer may exercise the option by providing written notice to TMI within 30 days prior to the expiration of the base term. Id. The Options Clause dictates that the Contracting Officer may exercise the option when:

> (1) It is determined that exercising the option is advantageous to the Government considering price and the other factors covered in (2 through 4 below).
> (2) The Contractor's electronic catalog/pricelist has been received, approved, posted, and kept current on GSA Advantage!™ in accordance with clause I-FCI-600, Contract Price Lists.
> (3) Performance has been acceptable under the contract.
> (4) Subcontracting goals have been reviewed and approved.

Id.

The Contract also incorporates 48 CFR 552.217-17 (GSAR 552.217-17), which provides,

> The General Services Administration (GSA) has included an option to [Insert "purchase additional quantities of supplies or services" or "extend the term of this contract" or "purchase additional quantities of supplies or services and to extend the term of this contract"] in order to demonstrate the value it places on quality performance by providing a mechanism for continuing a contractual relationship with a successful Offeror that performs at a level which meets or exceeds GSA's quality performance expectations as communicated to the Contractor, in writing, by the Contracting Officer or designated representative. When deciding whether to exercise the option, the Contracting Officer will

> consider the quality of the Contractor's past performance under this contract in accordance with 48 CFR 517.207.

See JA 50-51, Notice Regarding Option(s) (Nov. 1992). Under the referenced 48 CFR 517.207, the Contracting Officer must "[c]onclude that the contractor's performance under the contract met or exceeded the Government's expectation for quality performance, unless another circumstance justifies an extended contractual relationship," and "[d]etermine that the option price is fair and reasonable." 48 CFR 517.207(b),(c). Notably, neither Clause I-FSS-163(b) nor 48 CFR 517.207 preclude the Contracting Officer from exercising the option on the grounds that the Contractor could not re-certify as a small business at the time of the option.

**IV. Modifications to the Contract**

The Contract contains a commercial item Changes Clause, FAR 52.212-4(c), which provides that "[c]hanges in the terms and conditions of this contract may be made *only by written agreement* of the parties." JA 16, FAR 52.212-4(c), Changes Clause (emphasis added). The Contract's Modifications Clause includes a way for the contractor to suggest modifications to the contract, but by its terms, does not apply to modifications proposed by GSA. The Modifications Clause, provides in pertinent part:

> (a) General. The Contractor may request a contract modification by submitting a request to the Contracting Officer for approval, except as noted in paragraph (d) of this clause. At a minimum, every request shall describe the proposed change(s) and provide the rationale for the requested change(s).

See JA 28-29, Modifications (Multiple Award Schedule).

The Contract was validly amended, by written agreement of the parties, a number of times. However, in September 2003, GSA attempted to unilaterally amend the Contract by incorporating Modification MO06, which was never subject to a written agreement by both parties, as required by the Changes Clause. As authority for its actions, GSA cited the

Modifications Clause, which provides only the method by which a Contractor, not the Agency, may propose modifications to the Contract.

One of the Clauses contained in Modification MO06 is Clause I-FSS-95, Re-Representation of Size Status for Option Periods (Jun 2003), which provides, in pertinent part:

> For certain requirements, the Government enters into contracts with multiple contractors for the same or similar services or products. Such contracts frequently contain options that allow the contract to be extended when it is determined to be in the best interest of the Government. Contract extensions may have an impact on the program established by the Government to assist small businesses when there is a change in the status of the Contractor during the contract term.
> Prior to the time the Contracting Officer exercises an option, the Contractor will be required to re-represent business size status and 8(a) program eligibility to the Contracting Officer by completing the applicable portion of 52.212-3, Offeror Representations and Certification—Commercial Items, or 52.219-1, Small Business Program Representations, as applicable to this contract.
>
> * * *
>
> (b) When the contract resulted from a small business set-aside: If a previously awarded small business concern re-represents itself as other then small, the Contracting Officer shall be precluded from exercising the option.

JA 245. This Clause is based upon GSA Acquisition Letter MV-03-01, issued February 21, 2003, and currently in effect. <u>See</u> JA 285; JSUF ¶ 9.

At the time the Contract was signed, the Federal Acquisition Regulation included FAR 1.108, which has not been changed since. This regulation provides, in pertinent part:

> The following conventions provide guidance for interpreting the FAR:
>
> * * *
>
> (d) Application of FAR changes to solicitations and contracts. Unless otherwise specified--
> (1) FAR changes apply to solicitations issued on or after the effective date of the change;
> (2) Contracting officers may, at their discretion, include the FAR changes in solicitations issued before the effective date,

> provided award of the resulting contract(s) occurs on or after the effective date; and
>
> (3) Contracting officers may, at their discretion, include the changes in any existing contract *with appropriate consideration.*

48 CFR 1.108(d) (emphasis added). GSA's attempt to unilaterally incorporate I-FSS-95(b), through Modification MO06, into the Contract was without appropriate consideration because it was done without written agreement by both parties.

**V. SBA's Policy on Re-Certification of Small Business Size Status**

As discussed above, at the time TMI and GSA entered into the Contract, SBA regulation 13 CFR 121.404 stated that the small business status of a vendor was established by the vendor's status at the time its offer was submitted to the government. On November 15, 2006, the SBA adopted revised regulations, effective June 30, 2007, dealing with re-certification of small business size status for option exercises. These new regulations can be applied to the TMI contract only by way of bilateral modification of the contract, which has not occurred. However, TMI presents these regulations for the court's consideration to demonstrate that the GSA policy of not exercising options with large businesses is improper and indeed anti-competitive in the eyes of the SBA.

These revised regulations confirm that they were not intended to change the terms and conditions of the contract. The new regulations provide:

> *Re-certification does not change the terms and conditions of the contract*. The limitations on subcontracting, non-manufacturer and subcontracting plan requirements *in effect at the time of contract award* remain in effect throughout the life of the contract.

13 CFR 121.404(g)(3)(ii) (emphasis added).

The revised regulations also confirm that an agency is allowed to exercise options with a small business set-aside contractor that is no longer a small business. In SBA's comments accompanying the revised regulations, the SBA expressly concluded:

> The final rule does not prohibit a contracting officer from exercising an option, even where a concern has outgrown the applicable size standard on a small business set-aside contract….

71 FR 66436.

The SBA comments further stated that:

> …contractors which had grown to be other than small would not be "ineligible" to receive further orders….if a procuring agency exercised an option with concern that had grown to be other than small, subsequent orders would not count towards the procuring agency's small business prime contracting goals.

71 FR 66436.

The SBA comments also stated that when an agency declines to exercise an option with a small business set-aside contractor that is no longer a small business, "it would lead to a dwindling pool of competition, which is contrary to the intent and purpose of the statutory and regulatory multiple award contracting provisions. SBA does not want to provide agencies and contractors with a disincentive to enter into long-term contracts." 71 FR 66436.

## VI. TMI's Claim to the Contracting Officer

The Contract provides a way for contract interpretation issues to be resolved short of a formal protest:

> No interpretation of any provision of this contract, including applicable specifications, shall be binding on the Government unless furnished or agreed to in writing by the Contracting Officer or his designated representative.

JA 43, Clause I-FSS-956, Interpretation of Contract Requirements (Apr. 1984). The Contract

also contains a commercial item Disputes Clause, which provides as follows:

> This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613). Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

JA 16, Disputes Clause.

Through informal discussions with the Contracting Officer, TMI learned that the Contracting Officer was reluctant to exercise the option with TMI because he believed that Clause I-FSS-95(b), which requires a small business to re-certify its small business status as a condition of getting an option exercised, had been incorporated into the Contract via Modification MO06. The Contracting Officer therefore determined that I-FSS-95(b) properly applied to the Contract, and that this clause precluded him from exercising the option with TMI if TMI was no longer a small business.

Because the Contract invited a contractor to ask for an informal interpretation of contract provisions under I-FSS-965, TMI asked the Contracting Officer whether GSA would exercise the option with TMI prior to September 30, 2007, because TMI no longer qualifies as a small business. On April 25, 2007, the Contracting Officer gave TMI his conclusion that clause I-FSS-95(b) precluded GSA from exercising an option with a vendor that was no longer a small business. JA 273. Although citing the Options Clause as his authority, the Contracting Officer made no mention as to whether his decision would be based on the option exercise standards stated in that clause, namely, whether "the option is advantageous to the Government considering price and other factors" including whether "performance has been acceptable under

the contract." In addition, the Contracting Officer's letter did not acknowledge that his option exercise decision would be based on GSAR 552.217-71 which obligated the GSA contracting officer to consider "the quality of the contractor's past performance under this contract" in deciding whether to exercise an option.

On May 1, 2007, TMI submitted a formal claim to the Contracting Officer under the Disputes Clause asking for a formal Contracting Officer Final Decision on whether I-FSS-95(b) applied to the contract and whether GSA was prohibited from exercising an option with a vendor that is no longer a small business. JA 274. In its formal claim, TMI argued that the Government's attempt to add that clause to the TMI Contract unilaterally violated the Contract's commercial item Changes Clause requiring any modifications of the Contract to be bilateral. JA 274-78.

By letter dated June 13, 2007, the Contracting Officer denied TMI's claim, concluding, in pertinent part, that:

> Clause I-FSS-95 was incorporated into your contract by unilateral modification MO06, effective September 20, 2003 without any objection by TMI. More than three years have passed since the incorporation of that clause and TMI has continued performance under the new terms of the contract without objection.
>
> * * *
>
> The government has the unilateral right to exercise an option on a contract. It is not in the best interest of the GSA to exercise an option to a large business when the contract resulted from a total small business set-aside.
> Under the terms of clause I-FSS-95, the GSA is prohibited from exercising an option with a company that has become large when the contract was awarded under a small business set-aside.
>
> Based on the information outlined in the paragraphs above and accordance with clauses I-FSS-163 and I-FSS-95, the government will not exercise the option for contract GS-07F-0007N.

JA 279-80.

**VII. Harm to TMI if GSA Invalidly Declines to Exercise the Option**

TMI's contract with the GSA is currently the primary source of TMI's business. The base year of the Contract will expire on September 30, 2007. If the Government refuses to exercise the first of three five-year options, TMI would no longer be able to provide services under the Contract and would lose approximately $19,000,000 in contracts written under various BPA's under this GSA schedule. Affidavit of Rudy Vegliante, Executive Vice President of TMI Management Systems (hereinafter, "Vegliante Affidavit"), ¶ 2. Additionally, TMI would lose more than 55% of its total annual revenues, have to lay off over 600 employees, two Regional Managers, and 60% of its corporate staff. Id. at ¶¶ 3, 5. The significant loss in annual revenues under the GSA contract and the BPAs under the contract would compromise TMI's ability to retire long-term debt incurred in providing services to the Government under the GSA contract. Id. at ¶5. TMI would also be forced to default (or buy out) on space leases TMI has at various sites to support its Government clients, the remaining durations of which (2-3 years) are tied into the time frame of the BPA's TMI has with these Government customers. Id. at 4.

**JURISDICTION**

This Court has jurisdiction over the subject matter of this action pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(2), and the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§601-613. This Court has jurisdiction to grant nonmonetary relief, including declaratory relief, in connection with a claim arising under 41 U.S.C. § 609(a)(1) of the CDA. Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1270 (Fed. Cir. 1999); Record Steel & Constr., Inc. v. United States, 62 Fed. Cl. 508, 520 (2004); 28 U.S.C. § 1491(a)(2).

**STANDARD OF REVIEW**

The Court may grant a party's Motion for Summary Judgment "if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005); RCFC 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the Court must view the facts and inferences drawn from the facts in the light most favorable to the non-moving party. North American Constr. Corp. v. United States, 56 Fed. Cl. 73, 78 (2003), citing Anderson, 477 U.S. at 255. The party opposing summary judgment may not rest upon mere conclusory statements, allegations or denials, but must "produc[e] sufficient evidence that there is a genuine issue of material fact in dispute which would allow a reasonable finder of fact to rule in its favor." North American Constr. Corp., 56 Fed. Cl. at 78; Anderson, 477 U.S. at 249-50; Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Pursuant to 41 U.S.C. § 609(a)(3), in actions appealing the decision of a Contracting Officer under the CDA, the Court of Federal Claims engages in *de novo* review of a the Contractor's claim. "[F]indings of fact made by the contracting officer are neither binding upon the court, nor are they evidence." Conner Bros. Constr. Co. v. United States, 65 Fed. Cl. 657, 667 (2005). A contracting officer's Final Decision is not entitled to any deference, and "once an action is brought following a contracting officer's decision, the parties start in court . . .with a clean slate." Wilner, d/b/a Wilner Constr. Co v. United States, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994).

In moving for summary judgment, TMI's motion follows the analysis described in the seminal and analogous declaratory judgment decision, Alliant Techsystems, Inc. v. United States, 178 F.3d 1260 (1999). In that case, the court identified a helpful analytical approach: "whether the court should grant relief on the merits and what form such relief should take." Alliant, 178 F.3d at 1270.

## ARGUMENT

### I. The Court Should Grant Relief on the Merits

TMI seeks relief from GSA's improper refusal to exercise the option in the TMI-GSA commercial item contract. This Court should grant relief because (1) GSA's attempt to change the 2002 Contract's option language was invalid, and (2) the 2002 Contract does not give GSA the right to refuse to exercise the option on the grounds GSA used: TMI no longer being a small business.

#### A. Modification MO06 Was Not Validly Incorporated into the Contract

The Contracting Officer's sole basis for declining to exercise the option was that he was prohibited from doing so by Clause I-FSS-95(b), which he claimed had been "incorporated into [the Contract] by unilateral modification MO06[.]" JA 279. Plaintiff disputes that Modification MO06, and consequently Clause I-FSS-95(b), were validly incorporated into the Contract, because Modification MO06 was not the subject of a written agreement of both parties, as required by the Contract's commercial item Changes Clause. See JA 16.

The first step in resolving a contractual dispute is to look to the plain language of the agreement. St. Christopher Assocs., L.P. v. United States, 75 Fed. Cl. 1, 10 (2006), citing Foley Co. v. United States, 11 F.3d 1032, 1034 (Fed. Cir. 1993). "[W]hen the contract language is unambiguous, the court's inquiry is at an end." North Star Alaska Hous. Corp. v. United States,

76 Fed. Cl. 158, 193 (2007). Here, the Contract contains a commercial item Changes Clause that explicitly provides: "Changes in the terms and conditions of this contract may be made *only by written agreement* of the parties." JA 16, Changes Clause (emphasis added). The requirements of the Changes Clause are unambiguous. Under the plain meaning of this clause, a modification or change to the Contract is valid only if it is the subject of a written agreement of both parties.

Because TMI did not sign Modification MO06 in September 2003, and has not entered into any subsequent written agreement that would have later incorporated Modification MO06 into the Contract, Modification MO06 is not the subject of a written agreement of both parties. In fact, GSA indicated on the first page of Modification MO06 that the Contractor was not required to sign the document. JA 238. The Contracting Officer admitted in his June 13, 2007 Final Decision that Modification MO06 was a *unilateral* modification. See JA 279 ("Clause I-FSS-95 was incorporated into your contract by unilateral modification MO06[.]"). This is a violation of the unambiguous requirement of the commercial item Changes Clause that all changes and modifications be made by written agreement of both parties, and therefore Modification MO06 has not been validly incorporated into the Contract.

GSA cited GSAR 552.243-72, the Modifications Clause, as its authority for its unilateral incorporation of Modification MO06 into the Contract. JA 238. This clause, however, does not provide any authority to GSA to unilaterally modify the Contract. The Modifications Clause, by its terms, applies only to modifications proposed by the contractor, and not to modifications proposed by the GSA. JA 28-29, Modifications (Multiple Award Schedule). Nothing in the Modifications Clause suggests that the GSA may make unilateral modifications to the Contract. Moreover, GSA did not even comply with the requirements of the Modifications Clause, which state that "every request [for a modification] shall describe the proposed change(s) and provide

the rationale for the requested change(s)." Id. GSA has cited to no other authority in the Contract or elsewhere for its ability to unilaterally incorporate modifications into the Contract without written agreement of both parties. Given the unambiguous requirement of the Changes Clause that all modifications and changes to the Contract be bilateral, Modification MO06 has not been validly incorporated into the Contract.

In addition, because the Contract's Changes clause says that changes may be made "only" with the written consent of both parties, changes cannot be made any other way, including by the silence of the other party. The Contracting Officer stated in its Final Decision that Modification MO06 was incorporated "without any objection by TMI." JA 279. While it may be true that TMI never formally objected to Modification MO06, TMI's silence is not a sufficient basis for concluding that Modification MO06 was validly incorporated into the contract. "Documents will be considered part of a contract *only* when the *intention* to do so is clearly manifested." Travelers Casualty and Surety Co. v. United States, 75 Fed. Cl. 696, 712 (2007) (emphasis in original), citing Rumsfeld v. Freedom N.Y. Inc., 329 F.3d 1320, 1361 (Fed. Cir. 2003). The fact that TMI did not formally object to the incorporation of Modification MO06, especially in light of the fact that all modifications were required to be signed in writing by both parties to be valid, cannot reasonably be deemed to be a "clear manifestation" of its intent to incorporate Modification MO06 into the Contract. Therefore, the Government's argument that Modification MO06 was unilaterally incorporated because TMI continued performance of the Contract "without objection" must fail, and the Court should find that Modification MO06 has not been validly incorporated into the Contract.

**B. GSA Breached the Contract When It Declined to Exercise the Option Without Considering the Factors Required by the Options Clause and Based Its Decision Upon a Clause That Was Not Validly Incorporated Into the Contract**

TMI is entitled to relief because the plain language of the 2002 Contract's option provisions do not give GSA the right to make the option exercise decision on the basis of whether TMI is a small business.

The Government must follow the terms of the contract in deciding whether to exercise an option. New England Tank Indus. of New Hampshire, Inc. v. United States, 861 F.2d 685, 687 (Fed.Cir.1988) ("[T]o properly exercise [an] option, the government's acceptance of the offer had to be. . . in exact accord with the terms of the contract[.]") In this case, GSA did not consider the option evaluation factors stated in the 2002 contract but instead considered only TMI's inability to re-certify its small business status. In ignoring the unambiguous requirements of the Contract, GSA failed to consider one factor both option provisions of the Contract stress – "past performance" – and based its refusal solely on an option evaluation factor – "small business" status – not found in the Contract.

The first options provision in the Contract is GSAR 552.217-71, which provides in pertinent part, that "[w]hen deciding whether to exercise the option, the Contracting Officer will consider the quality of the Contractor's past performance under this contract in accordance with 48 CFR 517.207." JA 50-51. The CFR citation, 48 CFR 517.207, is labeled "Exercise of options" and reads as follows:

> Before exercising an option, you must:
>
> (a) Synopsize it…
> (b) Conclude that the contractor's performance under the contract met or exceeded the Government's expectation for quality performance, unless another circumstance justifies an extended contractual relationship.
> (c) Determine that the option price is fair and reasonable.

The second option clause in the Contract is I-FSS-163, Option to Extend the Term of the Contract (Evergreen) (Apr. 2000). The option evaluation factors in that clause also focus on past performance, as well as "price and other factors." Specifically, the Government may exercise the option when:

> (1) It is determined that exercising the option is advantageous to the Government considering price and the other factors covered in (2 through 4 below).
> (2) The Contractor's electronic catalog/pricelist has been received, approved, posted, and kept current on GSA Advantage!™ in accordance with clause I-FCI-600, Contract Price Lists.
> (3) Performance has been acceptable under the contract.
> (4) Subcontracting goals have been reviewed and approved.

JA 36-37.

The Contracting Officer's reason for refusing to exercise TMI's option has been clearly stated in two documents: the April 25, 2007 GSA letter to TMI and the Contracting Officer's Final Decision of June 13, 2007. In each of these documents, GSA stated that its basis for refusing to exercise the option is that TMI could not re-certify as a small business. From these two GSA documents, it is clear that the decision to not exercise the option was based on the small business/large business status of TMI, an option evaluation factor not found in the Contract, and was not based on an evaluation of the factors that GSA was obligated to use according to the Contract's options provisions.

The Contracting Officer's April 25, 2007 letter was sent in response to TMI's request under Contract Clause I-FSS-965 for an informal interpretation of the contract provisions, in which TMI asked the Contracting Officer whether GSA would exercise the option with TMI prior to September 30, 2007 now that TMI could no longer re-certify as a small business. The Contracting Officer's responded that he concluded that Clause I-FSS-95(b) precluded GSA from

exercising an option with a vendor that was no longer a small business. Although also citing as his authority Contract Clause I-FSS-163, Option to Extend the term of the Contract, the Contracting Officer made no mention of whether his decision would be based on the option exercise standards stated in that clause, namely, whether "the option is advantageous to the Government considering price and other factors" including whether "performance has been acceptable under the contract." Additionally, his letter did not acknowledge that his option exercise decision must be based on GSAR 552.217-71, which obligated the GSA contracting officer to consider "the quality of the contractor's past performance under this contract…" in deciding whether to exercise an option. In fact, the Contracting Officer made no indication that his decision would be based on the factors, namely past performance and price, required by the various options provisions.

The Contracting Officer also clearly stated in the June 13, 2007 Final Decision the Government's basis for refusing to exercise the option: "Under the terms of clause I-FSS-95, the GSA is prohibited from exercising an option with a company that has become large when the contract was awarded under a small business set-aside." JA 279. As discussed above, this clause has not been validly incorporated into the Contract, and therefore is an improper basis for declining to exercise the option. Furthermore, despite the fact that the Contracting Officer again referenced Clause I-FSS-163, which requires the Government to consider "price and other factors," including "past performance" in its decision whether to exercise an option, the Final Decision demonstrates that the Contracting Officer failed to consider these required factors in his decision. Thus, it is clear from these two GSA letters that the Contracting Officer's refusal to exercise the option was based solely on TMI's large business status, an option evaluation factor not found in the Contract.

## II. Declaratory Relief is an Appropriate Remedy

This Court has jurisdiction to grant nonmonetary relief, including declaratory relief, "in connection with contractor claims, including claims requesting an interpretation of contract terms." Alliant, 178 F.3d at 1270. The Tucker Act provides that "[i]n any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper or just." 28 U.S.C. § 1491(a)(2).

In determining whether declaratory relief is an appropriate remedy, the Court considers "whether the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interest." Alliant, 178 F.3d at 1271. In Alliant, the Federal Circuit stated that declaratory "intervention during contract performance" is appropriate to resolve claims "involving a fundamental question of contract interpretation or a special need for early resolution of an issue." Id.

### A. All Three Alliant Factors Have Been Met

#### 1. There is a Live Dispute Between the Parties

With regard to the first factor, it is clear that there is a live dispute between the parties. TMI and GSA disagree as to whether Modification MO06, and therefore I-FSS-95, has been validly incorporated into the Contract. The Contracting Officer has already made his determination that I-FSS-95 was validly incorporated into the Contract and therefore prohibits GSA from exercising the option at the conclusion of the base contract period on September 30, 2007. Thus, a declaratory judgment by the Court on this issue of whether Modification MO06

was validly incorporated into the Contract would not be akin to an advisory opinion, but rather would resolve a current dispute over contract terms.

### 2. A Declaration Would Resolve the Parties' Dispute

The second factor is also met because a declaration will resolve the parties' dispute. The Contracting Officer's sole basis for declining to exercise the option is because he believes I-FSS-95 has been incorporated into the Contract. TMI disagrees with this determination, and believes that I-FSS-95 has not been incorporated into the Contract and therefore GSA is not prohibited from exercising the option solely because TMI can no longer re-certify as a small business. Under the Options Clauses of the Contract, the Contracting Officer is not given completely unrestricted authority to decline to exercise the option, but rather must consider the quality of TMI's past performance under the contract and determine whether the option price is fair and reasonable. Thus, should the Court find that Modification MO06 was not validly incorporated into the Contract, the Contracting Officer must reconsider whether to exercise the option based upon those factors required by the Options Clauses.

### 3. Monetary Remedies Would Not Adequately Protect TMI's Interests

The third factor of the declaratory relief analysis is also met because monetary remedies would not be adequate to protect TMI's interest should the Court find that GSA declined to exercise the option on an improper basis. It is not necessary for TMI to demonstrate irreparable injury in an action for declaratory relief. See PGBA v. United States, 389 F.3d 1219, 1228 n.6 (Fed. Cir. 2004) (citing Perez v. Ledesma, 401 U.S. 82, 123 (1971)). The Court may deem a legal remedy inadequate, and therefore equitable relief appropriate, where "a monetary award would be speculative because the amount of damage would be difficult or impossible to

measure." 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure (Wright & Miller) § 2944.

In this case, a monetary award would not be adequate because the amount of appropriate monetary damages is speculative. Although TMI can conclusively state that it has been averaging a 10% gross profit margin on its GSA contracts, for an annual profit of approximately $1.9 million, each new option period would require GSA to evaluate whether exercising the option is in GSA's best interest at that time. Therefore, should the Court find in favor of TMI and hold that GSA improperly concluded that it was prohibited from exercising the first of these three options, it would not be possible to determine at this point whether the adequate measure of damages is compensating TMI for its lost profits under the Contract for five, ten, or fifteen more years. Additionally, the damages from losing potentially three five-year options get more speculative the further you go out from October 2007 to October 2022, as the $1.9 million a year average has only been for the period of 2002 through 2007, and it would be difficult to determine how the market and the Government's needs would affect this average over the next five to fifteen years.

Equitable relief is also appropriate in this case because GSA's decision not to exercise the option will result in a chain-reaction of events that would be quite detrimental to TMI's existence as a business. The Contract between TMI and GSA is TMI's primary source of business. The profits that TMI would lose in contract under various BPAs under this GSA schedule represents over 55% of its total annual revenues, and consequently if GSA does not exercise this option, TMI would have to lay off over 600 employees, two Regional Managers, and 60% of its corporate staff. These necessary cut-backs would have serious implications for TMI's ability to market and manage new business. The loss of this staff would also affect TMI's ability to

continue to service other contracts that are not under the GSA schedule, but rely on these Regional Managers and Corporate staff. Additionally, the loss of cash flow from the GSA contract and BPAs under the contract would compromise TMI's ability to retire long-term debt incurred in providing services to the Government under the GSA contract. Therefore, a decision not to exercise the option would result in a major restructuring of TMI that would have an immediate and significantly detrimental effect on TMI's ability to conduct its business, and the subsequent losses that TMI would incur as a result are largely speculative and incalculable.

Accordingly, this case is suitable for declaratory relief because it presents a live controversy that turns on the interpretation of contract terms and ultimately could result in GSA determining that exercising the option would be in its best interest, after considering TMI's past performance and the option price as required by the Options Clauses.

**B. Declaratory Relief Would Not Interfere With Contract Performance**

"The discretion to grant declaratory relief only in limited circumstances allows the court or board to restrict the occasions for intervention during contract performance to those involving a fundamental question of contract interpretation or a special need for early resolution of a legal issue." Alliant, 178 F.3d at 1271. In Newport News Shipbuilding and Dry Dock Co. v. United States, 44 Fed.Cl. 613 (1999), this Court stated that "the role of this court should not include micromanagement of the details of contract negotiation and execution. For example, disagreement over where a parcel of steel should be placed in a warehouse would not be suitable for this court's jurisdiction." Id. at 616. The issues in this case, whether I-FSS-95(b) has been validly incorporated into the Contract and whether GSA is permitted to base its option decision solely on TMI's large business status, are the type of fundamental questions of contract interpretation that fall within this Court's jurisdiction for granting declaratory relief. TMI is not

requesting that the Court "micromanage" the contract performance by stepping into the shoes of the GSA to determine whether it would be in GSA's best interest to exercise the Contract option. Rather the relief TMI seeks is that the Court declare and adjudge that, under the Contract's explicit terms and provisions, it was impermissible for GSA to decline to exercise the option solely based on TMI's size status, without considering TMI's past performance, option price offer, and other factors. The relief sought is only a matter of contract interpretation and does not require the Court to get involved in the specific details of an on-going Contract. Rather, like in Alliant, the relief goes to the fundamental question of whether a contractor should be performing work under the contract at all. Thus, it would be appropriate for the Court to award declaratory relief in this case.

## CONCLUSION

Based upon the foregoing reasons, Plaintiff TMI respectfully requests that the Court enter an Order granting Summary Judgment in favor of Plaintiff, declaring that Clause I-FSS-95 is not validly incorporated into the Contract, that GSA breached the Contract when it failed to consider required factors when making its option decision, and that GSA shall reconsider whether or not to exercise the option based upon the factors set forth in the Contract's options clauses.

Respectfully submitted,

__/s Terrence O'Connor__

TERRENCE O'CONNOR
Stephanie D. Wilson
ALBO & OBLON, L.L.P.
2200 Clarendon Boulevard, Suite 1201
Arlington, Virginia 22201
Telephone: (703) 562-3382
Facsimile: (703) 312-0415
*Counsel for TMI Management Systems, Inc.*

Dated: July 27, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of July, 2007, a copy of the foregoing "PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Terrence O'Connor