**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| TMI MANAGEMENT SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 07-407C<br><br>Senior Judge Smith |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff TMI Management Systems, Inc. ("TMI"), by undersigned counsel, pursuant to United States Court of Federal Claims Rule ("RCFC") 56(c), hereby submits this Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment and Opposition to Defendant's Cross-Motion for Summary Judgment.

## ARGUMENT

### I. GSA is Required to Comply with the Contract's Options Clauses in Deciding Not to Exercise an Option

At the outset, it is important to note that Plaintiff agrees with the Defendant that the Government has the sole discretion to exercise the option and that nothing in the Contract commits the Government to renewal. Indeed, nowhere has Plaintiff argued that the Government is obligated to exercise the option. Rather, it is Plaintiff's position that the Government is obligated to adhere to the Contract's requirements in making its decision whether to exercise the option. The Government's right not to exercise the option is not as completely unrestricted as the Government would like the Court to believe. The fact that the decision of whether to exercise the option is within the sole discretion of the Government only means that it is the

Government's, and not TMI's, ultimate decision whether or not to extend the Contract. "Sole discretion" means only that the option decision is a unilateral Government decision. The Government's decision still must conform to the Contract's requirements and cannot stand if it violates the terms of the Contract.

Defendant attempts to make a distinction between the Government declining to exercise the option and the Government choosing to exercise the option, contending that the options clauses apply to the latter situation, but not the former. Def. Mot. at 7.[1] However, these two situations are just two sides of the same coin – the Contracting Officer's decision whether or not to exercise the option. Under Defendant's approach, the Government would only be required to consider these factors set forth in I-FSS-163(a) *after* it has already chosen to exercise the option. This approach is incorrect and unreasonable. Because these factors are to serve as guidelines for the Government's decision whether to exercise the option, it would be an illogical interpretation of the Contract to state that these guidelines apply if, and only if, the Government has already made its decision to exercise the option.

The unreasonableness of the Government's distinction is also seen by reference to 48 C.F.R. § 552.217-71, incorporated into the Contract, which provides, in part, that "[w]hen deciding *whether to exercise* the option, the Contracting Officer will consider the quality of the Contractor's past performance under this contract in accordance with 48 CFR 517-207." J.A. at 50 (emphasis added). The language of this regulation is plain – it provides instructions to the Contracting Officer "when deciding *whether to exercise* the option," *not* if and only if the Contracting Officer has chosen to exercise the option. Thus, the Defendant is mistaken in its claim that the option factors set forth in 48 C.F.R. § 517-207 are not required to be considered by

[1] "Def. Mot. at ___" refers to the page in Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment.

the Government when it ultimately decides not to exercise an option. It would therefore constitute a breach of contract for the Contracting Officer to decline to exercise the option without considering these required factors.

## II. Neither the Contract Nor the Acquisition Letter Prohibited the Contracting Officer from Exercising the Option

As Plaintiff has already explained in greater detail in its Motion for Summary Judgment and above, although the Government does have sole discretion whether or not to exercise the option, it must make this decision in accordance with the terms of the Contract. The only reason given by the Contracting Officer for declining to exercise the option was that he was prohibited from doing so by the incorporation of clause I-FSS-95 into the Contract. Plaintiff has already shown, and Defendant does not adequately dispute,[2] that clause I-FSS-95 was never validly incorporated into the Contract.

Defendant contends that whether or not I-FSS-95 was validly incorporated into the contract is irrelevant "because no provision of the contract restricts the Government's freedom to decline the exercise of an option to extend the contract." Def. Mot. at 9. Defendant's statement is too broad. The Government's right not to exercise the option is not as unrestricted as the Defendant contends, because the Government must adhere to the express terms of the Contract in making its decision. Because the Contracting Officer's sole basis for declining to exercise the option was his belief that I-FSS-95 prohibited him from doing so, the issue of whether or not that clause was incorporated into the Contract is certainly relevant, and in fact central, to this case.

[2] Although Plaintiff presented more than two pages of argument and authority supporting its contention that I-FSS-95 was never validly incorporated into the Contract, Defendant's only response is that "More than three years have passed since the incorporation of that clause, and TMI has continued performance under the new terms of the contract without objection." Def. Mot. at 9. However, Defendant has cited to no authority in support of its claim that the mere passage of time is sufficient to incorporate MO06 into the Contract, nor attempted to show how this claim can be reconciled with the plain language of the Contract mandating that changes can be made only with the consent of both parties. See JA at 16.

Defendant also argues that whether I-FSS-95 was incorporated into the Contract is irrelevant because "the contracting officer would have declined to exercise the option in this case regardless of clause I-FSS-95 because GSA directive, FSS acquisition letter FX-03-3, issued June 19, 2003 . . . required that the contracting officer decline to exercise options with companies that are no longer small business." Def Mot. at 9-10. Although the Contracting Officer claims now, for the first time, during the course of litigation, that his decision not to exercise the option with TMI was based upon the guidance outlined in the GSA directive, see Armstead Decl. ¶¶ 11-12, his final decision quite clearly stated that the sole basis for his decision was that he believed he was prohibited from exercising the option by the incorporation of I-FSS-95 into the Contract.[3] Nevertheless, as Plaintiff discussed in its opening brief, in an appeal of the Contracting Officer's final decision, this Court engages in *de novo* review of the Contractor's claims and the Contracting Officer's decision is entitled to no deference. Conner Bros. Constr. Co. v. United States, 65 Fed. Cl. 657, 667 (2005); Wilner, d/b/a Wilner Constr. Co v. United States, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994). Thus, it is for this Court to determine whether I-FSS-95 was validly incorporated into the Contract and whether TMI's inability to certify as a small business when it competes for other contracts bars the GSA from exercising the option.

In addition, it is important to note, with reference to the Contracting Officer's contention that he "made the decision to not exercise the option with TMI based on the guidance outlined in the GSA Acquisition Letter MV-03-01 and reiterated by FSS Acquisition Letter FX-03-3[.]," see

---

[3] The Contracting Officer's final decision provides, in relevant part:

> Under the terms of clause I-FSS-95, the GSA is prohibited from exercising an option with a company that has become large when the contract was awarded under a small business set-aside.
> Based on the information outlined in the paragraphs above and accordance with clauses I-FSS-163 and I-FSS-95, the government will not exercise the option for contract GS-07F-0007N.

JA at 279-80.

Armstead Decl. ¶ 11, that neither of these Acquisition Letters was in effect at the time TMI and GSA entered into the Contract. As the Contract clearly established the permissible factors for the Contracting Officer to consider in making an option decision, any changes to these factors, whether by the Acquisition Letters or future regulations, could only apply to the Contract by way of modification. See JA at 16 ("Changes in the terms and conditions of this contract may be made only by written agreement of the parties.").

Furthermore, paragraph 7.f. of the FSS Acquisition Letter specifically provides for the manner in which the re-certification requirement was to be applied to existing GSA contracts:

> The attached clause, I-FSS-95 – Re-Representation of Size Status at Options (JUN 2003), informs offerors that before exercising any option to a contract, contractors must re-represent size status. After the effective date of this AL, for all applicable multiple award solicitations and contracts, the contracting officer must:
> . . .
> • modify existing contracts to incorporate clause I-FSS-95 with the next contract modification.

JA at 283. This further supports Plaintiff's argument that an additional contractual action must be taken in order for the recertification requirement to take effect. See BearingPoint, Inc. v. United States, 77 Fed. Cl. 189, 194 (2007) (finding that where the language of an agency directive requires additional contractual action to take effect, without that contractual action the terms of the contract remain unaffected by the directive).

Because the class deviation to the FAR was not in place at the time TMI and GSA entered into the Contract, it could only be applied to the Contract by way of modification, which has not occurred. Therefore, neither clause I-FSS-95, which was never validly incorporated into the Contract, nor the Acquisition Letters requires TMI to re-certify itself as a small business in order for GSA to exercise the option.

Nor can the way the size status of a small business is determined be unilaterally changed. FAR 19.301(a), as it was in effect at the time TMI and GSA entered into the Contract, controls. This regulation provided that the small business status of a vendor is established by the vendor's status at the time it self-certifies its status. This is consistent with 13 C.F.R. § 121.404 as of the date of the contract.[4] The fact that the Government, after the Contract had been signed, modified its regulations to require contractors to re-certify as small businesses before the agency may exercise an option does not bar the Contracting Officer from exercising TMI's option in this case. The FAR provides that "FAR changes apply to solicitations on or after the effective date of the change[.]" 48 C.F.R. § 1.108(d)(1). Although that regulation allows contracting officers to "include the changes in any existing contract with appropriate consideration," id. at (d)(3), TMI and GSA explicitly agreed that "[c]hanges in the terms and conditions of this contract may be made only by written agreement of the parties." JA at 16. "In this regard, the parties established the procedures by which subsequent changes to the FAR could be incorporated into the terms of their agreement." BearingPoint, 77 Fed. Cl. at 195. Because TMI and GSA have not bilaterally agreed to modify the Contract to retroactively change the small business rules that apply to the Contract, TMI is still considered a small business for the purposes of this Contract, TMI is not required to re-certify as a small business, GSA is not precluded from exercising its option with

[4] As of the date of the Contract, 13 C.F.R. § 121.404 provided:

> Generally, SBA determines the size status of a concern (including its affiliates) as of the date the concern submits a written selfcertification that it is small to the procuring agency as part of its initial offer including price. The following are two exceptions to this rule: (a) The size status of an applicant for a Certificate of Competency (COC) relating to an unrestricted procurement is determined as of the date of the concern's application for the COC. (b) Size status for purposes of compliance with the nonmanufacturer rule set forth in § 121.406(b)(1) and the ostensible subcontractor rule set forth in § 121.103(f)(3) is determined as of the date of the best and final offer.

Neither of the two exceptions to § 121.404 applies here.

TMI, and the GSA is not precluded from counting the option toward its small business prime contracting goals.[5] Therefore, the Contracting Officer must consider the price and other factors required by the Options Clauses of the Contract in deciding whether or not to exercise the option, and it was a breach of the Contract for him not to do so.

## III. Declaratory Relief Is Warranted

The Government tries to claim that declaratory relief would be meaningless because GSA still takes the position "that Schedule 736 contracts are only for small businesses." What the Government fails to acknowledge is that the law establishes that TMI, *for purposes of this contract,* is still a small business because "a deal is a deal." This principle that "a deal is a deal" is found throughout government contract case law:

> [T]he basic principle [is] that changes to regulations which occur after a contract begins and which substantively affect the rights of a party, generally cannot be retroactively applied, absent language saying otherwise. Put another way, we agree that a contract normally applies the substantive law in effect at the time it is entered.

In re Ace Property & Cas. Ins. Co., AGBCA No. 2006-130-R, June 28, 2006. This Court's predecessor, the United States Court of Claims, held:

> The normal rule is for legislation and regulations to be applied prospectively to events and agreements which occur later . . . . This is particularly true of directives dealing with the substantive aspects of

[5] 13 C.F.R. § 121.404(g)(3) provides:

> [Effective June 30, 2007.] For the purposes of contracts with durations of more than five years (including options), including Multiple Award Schedule (MAS) Contracts, Multiple Agency Contracts (MACs) and Government-wide Acquisition Contracts (GWACs), a contracting officer must request that a business concern re-certify its small business size status no more than 120 days prior to the end of the fifth year of the contract, and no more than 120 days prior to exercising any option thereafter. If the contractor certifies that it is other than small, the agency can no longer count the options or orders issued pursuant to the contract towards its small business prime contracting goals. The agency and the contractor must immediately revise all applicable Federal contract databases to reflect the new size status.

> contracts; it would be a rare regulation which would even seek to modify, to the contractor's detriment, substantive rights in an agreement already consummated.

Lockheed Aircraft Corp. v. United States, 426 F.2d 322, 327-28 (Ct.Cl. 1970).

The principle of "a deal is a deal" is found in the TMI Contract. Clause I-FSS-163 OPTION TO EXTEND THE TERM OF THE CONTRACT (EVERGREEN) APR 2000 acknowledges that the underlying terms and conditions of the base years continue unchanged into any option period unless some other clause allows such changes.[6] Significantly, no language in the Contract allows the Government to change the then-existing rule on certification of small business status – that a small business at time of self-certification remains a small business, even for options.[7]

As cited earlier, the principle that "a deal is a deal" was recently re-affirmed by this Court in BearingPoint v. The United States, 77 Fed.Cl. 189 (2007). The BearingPoint case involved a GSA Schedule 70 contract that was a commercial item contract, the same type of contract TMI has with GSA. Because it was a commercial item contract, changes to the contract could only be made with the consent of both parties. At the time the BearingPoint Contract was signed, FAR 1.108 stated that "FAR changes apply to solicitations issued on or after the effective date of the change." Notably, this same FAR provision was in effect when TMI signed its contract with GSA.

After the BearingPoint contract was signed, FAR revisions gave the ordering office authority to get involved in the default process. When the ordering office tried to terminate a task

[6] Clause I-FSS-163 cites only two clauses in the Contract that do authorize option term changes: the Price Adjustment Clause and the Price Reduction Clause.

[7] This conclusion about the enduring validity of small business status is one shared by the Government Accountability Office (GAO). Matter of: Vantex Service Corp., 1993 WL 76581 (Comp. Gen., March 10, 1993).

order, BearingPoint challenged the asserted right of the Government to unilaterally change the terms of the commercial item contract, namely, a change giving the ordering office the right to terminate a task order. The Court agreed with BearingPoint, stating that:

> Were the Court to accept Defendant's argument [that the Government could unilaterally change a commercial item contract contrary to the terms of the contract's Changes Clause], it would be difficult to envision any contract language upon which a contractor could rely to protect itself against unilateral Government modifications after the ink on their contract had dried. Defendant's argument runs counter to the fundamental prohibition against the retrospective application of legislation.

BearingPoint, 77 Fed.Cl. at 195.

Similarly, here, TMI's Contract's Changes Clause protects it against GSA's attempted unilateral modification of the terms by which the Contracting Officer must make his decision whether or not to exercise the option. Thus, the GSA's position that it could not exercise the option with TMI because TMI could no longer certify as a small business when competing for other contracts is contradicted by regulations and case law.

Defendant claims that declaratory relief is not warranted on its erroneous assumption that Plaintiff seeks a Court order directing the Contracting Officer to exercise the option. Def. Mot. at 12. However, a declaratory judgment is proper in this case and would afford complete relief, because Plaintiff is respectfully requesting that the Court declare that neither the Contract, applicable regulations, nor the Acquisition Letters prohibit GSA from exercising the option; that under applicable regulations, case law, and the well-settled principle that "a deal is a deal," TMI remains a small business for the purposes of this Contract for the duration of the Contract, including option periods; and that the Contracting Officer must comply with the Contract's requirements governing option decisions and may not rely upon an impermissible factor, such as TMI's inability to certify as a small business on other, future contracts. Such a judgment would

afford complete relief, because it would require the Contracting Officer to make his decision whether or not to exercise the option in accordance with the applicable regulations and the specific terms of the Contract.

## CONCLUSION

Based upon the foregoing reasons, Plaintiff TMI respectfully requests that the Court enter an order granting Summary Judgment in favor of Plaintiff, declaring that Clause I-FSS-95 is not validly incorporated into the Contract, that GSA breached the Contract when it failed to consider required factors when making its option decision, and that GSA shall reconsider whether or not to exercise the option based upon the factors set forth in the Contract's options clauses.

Respectfully submitted,

s/ Terrence O'Connor
Terrence M. O'Connor
Stephanie D. Wilson
ALBO & OBLON, L.L.P.
2200 Clarendon Boulevard, Suite 1201
Arlington, Virginia 22201
Telephone: (703) 562-3382
Facsimile: (703) 312-0415
*Counsel for TMI Management Systems, Inc.*

Dated: August 31, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of August, 2007, a copy of the foregoing "PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Terrence O'Connor